**SO ORDERED.**

**SIGNED December 16, 2025.**



_____
**JOHN W. KOLWE**
**UNITED STATES BANKRUPTCY JUDGE**

---

### UNITED STATES BANKRUPTCY COURT
### WESTERN DISTRICT OF LOUISIANA
### LAFAYETTE DIVISON

IN RE:
**BELL FAMILY TRUST**

       *Debtor*

**CASE NO. 02-50477**

**Chapter 7**

---

**BELL FAMILY TRUST, THROUGH
W. SIMMONS SANDOZ, TRUSTEE,**

      *Plaintiff*

**VERSUS**

**MARY SUE BELL, SUE BELL
HOLDINGS, L.L.C., and AMERADA
HESS CORPORATION,**

      *Defendants*

**ADVERSARY PROCEEDING
NO. 02-5045**

# MEMORANDUM OPINION AND ORDER

In the latest chapter of a long running saga, on July 28, 2025, the Plaintiff, the Bell Family Trust (the "Trust"), filed two motions—a Motion to Reopen Adversary Case and a Motion to Revive—aimed at reviving an August 1, 2005, Judgment (the "2005 Judgment") against Mary Susan Bell ("Ms. Bell"). The Court granted both motions on August 5, 2025.[1]

On September 9, 2025, Ms. Bell, one of the defendants and judgment debtor under the 2005 Judgment, filed a Motion for Sanctions and a Motion for Clarification. In the sanctions motion, Ms. Bell alleges she was not provided advance notice of the Motion to Revive Judgment, and she claims that if she had received notice, she could have shown the Court that the 2005 Judgment had been satisfied. She also claims the Trustee of the Trust, "without authorization in violation of the Bell Trust instructions and clause of 'spendthrift' and La Spendthrift trust law withheld from Mary S Bell her protected distributions of $302,756.79 . . ."[2] Thus, she seeks to sanction the Trust, and its Trustee, Greg Mier, for "intentionally falsifying information to this Court" to support the revival of the Judgment.

By way of the Motion for Clarification, Ms. Bell seeks "confirmation from this Bankruptcy Court that it does not have authority outside its jurisdiction to prevent Mary S Bell from filing a lawsuit in the Fifteenth Judicial State Court against Gregory Mier for all damages caused."[3] The basis for the clarification motion is uncertain, but it appears to be premised on an order this Court entered in August 2010, during the pendency of the Trust's Chapter 7 bankruptcy case, that prohibited Ms. Bell from filing any actions against the Trust, the Trustee or the beneficiaries of the Trust in any federal or state court.

The Trust filed an opposition to each of Ms. Bell's motions. The opposition to the sanctions motion points out that advance notice to a judgment debtor of a motion

---

[1] The Plaintiff also revived the 2005 Judgment in 2015 using the same procedure.
[2] Motion for Sanctions, (09/09/2025), ECF # 273, p.2.
[3] Motion for Clarification, (09/09/2025), ECF # 275, p.1.

to revive a judgment is not required under applicable law and thus there is no basis for this Court to award sanctions. With respect to the Motion for Clarification, the Trust claims it has no knowledge of prior orders that may have prohibited Ms. Bell from pursuing litigation in state or federal court. And since Ms. Bell did not provide documentation showing the basis for the Motion for Clarification, they claim the Motion should be denied for lack of any foundational support.

Ms. Bell, in a reply, filed several documents which she contends show that she has satisfied the portion of the 2005 Judgment that awarded money damages to the Trust. She also filed documents that she claims relate to the question of whether an order is currently in place that would prevent her from filing any litigation against the Trust or Mr. Mier as Trustee.

The Court held a hearing on these matters on October 7, 2025; Ms. Bell appeared pro se, and Mr. Mier appeared for the Trust. During the hearing it became obvious that the ultimate issue facing the court is whether the 2005 Judgment has been satisfied, and the hearing was not helpful in resolving that question. On the one hand, Ms. Bell vacillated from asserting that unverified and unauthenticated accounting records she filed in the record show that she satisfied the 2005 Judgment, to re-arguing legal and factual issues long ago settled either by the 2005 Judgment or other judgments and orders rendered in numerous lawsuits between the parties over the past 20-plus years and in the Trust's bankruptcy case. On the other hand, the Trust and Mr. Mier pointed to vague deficiencies in Ms. Bell's performance of her obligations under the 2005 Judgment and the fact that the accounting records referenced by Ms. Bell were not the official accounting records for the Trust.

The Court took the matters under advisement, primarily for the purpose of determining the remedy, if any, Ms. Bell or the Trust may have in this Court concerning satisfaction of the 2005 Judgment and to determine whether Ms. Bell's access to federal and state courts is currently limited. The Court has now considered these issues and finds that the Motion for Sanctions should be denied, as the Motion to Revive and corresponding Judgment of Revival comply with applicable law.

3

However, the Court also finds that the governing law on revival of judgments authorizes Ms. Bell to file a contradictory motion in this Court for the sole purpose of proving that she has satisfied the 2005 Judgment. The Court also concludes that this court, as the court that rendered the 2005 Judgment, has jurisdiction over such contradictory motion. Thus, the Court will all Ms. Bell 30 days from the date of this Memorandum Opinion and Order to file the contradictory motion.

As for the Motion for Clarification, the court finds that this Court's previous order that prohibited Ms. Bell from pursuing litigation against the Trust, its Trustee and beneficiaries in federal or state courts was based on the automatic stay that was in place under section 362 of the Bankruptcy Code during the pendency of the Trust's Chapter 7 bankruptcy case. Since the final decree was entered in the bankruptcy case over 13 years ago, and the case closed, the stay is no longer in place, and this Court is not aware of any other restrictions that would prevent Ms. Bell from pursuing litigation against the Trust and related parties in Louisiana state Courts. However, the United States District Court for the Western District of Louisiana and the United States Court of Appeals for the Fifth Circuit have entered orders that prohibit Ms. Bell from bringing frivolous, vexatious and abusive filings against the Trust and related parties and attorneys in federal court. Given the litigation history between the parties, which is outlined below, the Court finds that this restriction must remain in place, except for the aforementioned contradictory motion, which Ms. Bell is allowed to pursue in this Court for the sole purpose of showing the 2005 Judgment has been satisfied.

The Court will explain its reasoning for these decisions below.

## BACKGROUND

The parties have a history of litigation that spans nearly 25 years. Since one of the issues facing the Court is whether there is a sanction or other court order presently in place that would limit Ms. Bell's access to this and other courts, this

4

history is relevant here. Thus, the Court will set forth the basis of the original dispute between the parties and the history of the litigation between the parties.[4]

## A.    Formation of the Bell Family Trust and accompanying property transfers

Wilfred Bell created the Bell Family Trust in October 1996, naming Ms. Bell and her five siblings as beneficiaries. Ms. Bell was initially appointed as trustee, but she long ago ceded the position. In creating the trust, Mr. Bell donated several tracts of immovable property to the Trust, including a one acre tract on which his home was located.

Shortly after Mr. Bell donated the Property to the Trust, he signed a promissory note agreeing to pay $40,000.00 he allegedly owed to Ms. Bell. The debt was secured by a collateral mortgage in favor of Ms. Bell that encumbered the Trust's Property. Mr. Bell signed the promissory note and mortgage on March 12, 1997, and the mortgage was recorded in the Vermilion Parish records the next day.

On June 19, 2001, Wilfred Bell was interdicted under Louisiana law via proceedings initiated by Ms. Bell. Up until 2001, Ms. Bell had made distributions to the beneficiaries, including herself. During the summer of 2001, however, those distributions stopped, causing inquiries from the other beneficiaries. On July 31, 2001, the attorney for the beneficiaries made a written request to Ms. Bell for information and a trust accounting. This request was answered by Ms. Bell's

---

[4] This history is based on the following reported decisions: *In re Bell Fam. Tr.*, 350 B.R. 700 (Bankr. W.D. La. 2005), *subsequently aff'd as modified*, 251 F. App'x 864 (5th Cir. 2007) (Original 2005 Judgment); *In re Bell Fam. Tr.*, 251 F. App'x 864 (5th Cir. 2007) (Appeal of 2005 judgment to the 5th Circuit); *Bell v. Bell Fam. Tr.*, No. CIV.A. 13-0639, 2013 WL 9805802 (W.D. La. Sept. 16, 2013), *report and recommendation adopted*, No. CIV.A. 13-0639, 2013 WL 9805803 (W.D. La. Oct. 11, 2013) (Suit to appeal the jurisdictional basis and set aside the bankruptcy among other frivolous claims); *Bell v. Bell Fam. Tr.*, No. CIV.A. 13-0639, 2013 WL 9805803 (W.D. La. Oct. 11, 2013) (adoption of the magistrate's recommendation); *In re Bell Fam. Tr.*, 575 F. App'x 229 (5th Cir. 2014) (Appeal of frivolous claims to 5th Cir.); *Bell v. Bell Fam. Tr.*, 574 U.S. 1046, 135 S. Ct. 772, 190 L. Ed. 2d 625 (2014) (denial of motion before the Supreme Court); *Bell Fam. Tr. v. Vermilion Par. Clerk of Ct.*, 2021-573 (La. App. 3 Cir. 4/27/22), 338 So. 3d 537 (Appeal from suit against Ms. Bell in Louisiana state court).

attorney. In the meantime, Ms. Bell started preparing invoices to retroactively bill the Trust for her services as Trustee, claiming a total indebtedness of $330,151.60.

On August 21, 2001, Ms. Bell formed Sue Bell Holdings, LLC and on August 30, 2001, a dation en paiement ("Dation") was created between the Trust and Sue Bell Holdings, LLC. The Dation terminated the Trust as to Ms. Bell and transferred various Trust assets to the LLC, including the property encumbered by the Trust, and released the Trust from debt allegedly owed to the LLC, including the $40,000.00 promissory note. The trust assets transferred included 185 of the total 228 acres originally donated to the Trust; 100% of the mineral rights for all the acreage; and miscellaneous assets including a $16,000 promissory note from Nedia Bell, the Bell family home situated on the one acre of land, and several hundred shares of stock in Kaplan Farmers Co-Op, Inc.

## B.    The Bell Family Trust files a Chapter 7 Bankruptcy Proceeding and this Adversary Proceeding Commences

The beneficiaries of the Trust commenced a suit against Ms. Bell as Trustee in early 2002. In March 2002, Ms. Bell, on behalf of the Trust, filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. The bankruptcy case produced this adversary proceeding, with the Plaintiff, who was the Chapter 7 Trustee, alleging five grounds for recovery against Ms. Bell and her holding company, including claims for multiple breaches of fiduciary duty. The Chapter 7 Trustee further sought to reverse the property transfers occasioned by the Dation, alleging that they violated and/or were invalid under federal and Louisiana law.

After a trial, this Court rendered Reasons for Decision on June 21, 2005, finding Ms. Bell breached her fiduciary duties in numerous manners. Accordingly, the court awarded the Trust with various sums apparently representing the value of the property that had been transferred via the Dation, expenses unrelated to the Trust that had been paid by Ms. Bell, income Ms. Bell had received following the Dation, and money deposited into the court's registry. Additionally, the Court found setting aside the Dation and returning the transferred property to the Trust was

6

proper, stating "[w]ithout question, avoiding the transfer is the only appropriate method for satisfying the provision of La. R.S. 9:2221 requiring a trustee to redress a breach of trust."[5] The Court further found the Trust was entitled to avoid the transfers from the Dation because the Trustee received less than equivalent value, making them fraudulent under 11 U.S.C. § 548(a)(1)(B).[6] The ruling further directed counsel to submit a proposed judgment in accordance with the ruling.

On August 1, 2005, this court rendered judgment—the 2005 Judgment—in favor of the Trust and against Ms. Bell, that awarded the Trust with various sums, together with interest, in conformity with its Reasons for Ruling.[7] The judgment also awarded the Trust with property that was previously transferred from the Trust by the Dation, which in addition to certain real estate, also included the stock certificates in the Kaplan Farmers' Co-Op, Inc. and a promissory note dated August 21, 2001 made by Nedia LeLeux Bell in the principal sum of $16,279.13 and a $40,000.00 promissory note dated March 12, 1997 by Wilfred Bell. The "money judgment" portion of the 2005 Judgment provides:

1. In favor of the Bell Family Trust, through W. Simmons Sandoz, Trustee, and against Mary Sue Bell in the principal sum of $162,214.96 together with prejudgment interest at the state rate from date of judicial demand to date of judgment and thereafter post judgment interest at the Federal rate until paid for the breach of fiduciary duty.

2. In favor of the Bell Family Trust through W. Simmons Sandoz, Trustee, and against Mary Sue Bell in the principal sum of $266,468.60 plus prejudgment interest at the state rate from date of judicial demand to date of judgment and thereafter post judgment interest at the Federal rate until paid for breach of fiduciary duty.

3. In favor of the Bell Family Trust through W. Simmons Sandoz, Trustee, and against Mary Sue Bell in the principal sum of $60,000.00 plus prejudgment interest at the state rate from the date of judicial demand to date of judgment and thereafter post judgment

---

[5] *In re Bell Family Trust*, 350 B.R. at 707.
[6] *Id.*
[7] *See* ECF # 144.

7

interest at the Federal rate until paid representing damages for breach of fiduciary duty in the amount of sums paid as "retainer" from the Bell Family Trust to Mary Sue Bell.[8]

Under Paragraph 10 of the 2005 Judgment, Ms. Bell could satisfy the sum assessed in Paragraph 2, which is $266,468.60, "upon [her] compliance . . . with item nos. 7, 8 and 9" of the 2005 Judgment."[9] Those paragraphs provide:

7. In favor of the Bell Family Trust through W. Simmons Sandoz, and against Mary Susan Bell and Sue Bell Holdings, L.L.C., declaring null and void and without effect that certain Dation en Paiement executed effective August 31, 2001, recorded as Act No. 20109735, records, Vermilion Parish, on September 13, 2001, to be avoided, under 11 USC 548 (a)(1)(B)(i)(II) and (III) and La. R.S. 9:221, and all property and assets of any kind referenced therein to be delivered and conveyed to The Bell Family Trust via act translative of title signed and delivered by Mary Sue Bell and Sue Bell Holdings, L.L.C. and within twenty (20) days.

8. In favor of the Bell Family Trust, through W. Simmons Sandoz, Trustee, and against Mary Sue Bell and Sue Bell Holdings, L.L.C., declaring null and void and without effect that certain Act of Exchange dated August 31, 2001, by and between Sue Bell and Sue Bell Holdings, L.L.C., recorded as Act No. 20109734, Vermilion Parish records, on September 13, 2001, to be avoided under 11 USC 548 (8)(1)(B)(I)(B) and (ii)(II) and (III) and La. R.S. 9: 2221, and all property and assets of any kind referred therein to be delivered and conveyed to The Bell Family Trust via act translative of title signed and delivered by Mary Sue Bell and Sue Bell Holdings, L.L.C. within twenty (20) days.

9. In favor of the Bell Family Trust, through W. Simmons Sandoz, Trustee, and against Mary Sue Bell and Sue Bell Holdings, L.L.C., declaring all transfers of all assets via Termination of Trust and Distribution of Property dated August 31, 2001, by and between Sue Bell and Sue Bell Holdings, L.L.C., recorded as Act No. 20019733, Vermilion Parish records, on September 13, 2001, to be avoided under 11 USC 548 (8)(1)(B)(I)(B) and (ii)(II) and (III) and La. R.S. 9: 221, and all property and assets of any kind referred therein to be delivered and conveyed to The Bell Family Trust via act translative

---

[8] *Id.*
[9] *Id.*

8

of title signed and delivered by Mary Sue Bell and Sue Bell Holdings, L.L.C. within twenty (20) days.[10]

Ms. Bell appealed the 2005 Judgment to the United States Court of Appeals for the Fifth Circuit. In the meantime, on November 9, 2005, the bankruptcy court, pursuant to a motion filed by the Trust under Federal Rules of Bankruptcy Procedure 7070, rendered a judgment that specifically divested title of the Property from Ms. Bell and Sue Bell Holdings, LLC and vested title in the Bell Family Trust.

On September 10, 2007, to address Ms. Bell's concerns on appeal, Charles R. Fulbruge, III, Clerk of the Fifth Circuit, sent Mr. Jeffrey Ackermann, the attorney for the Chapter 7 Trustee, a letter asking for clarification regarding Ms. Bell's claims of the judgment awarding a double recovery. Mr. Ackermann responded as follows:

I.   Mary Sue Bell has not been double charged by the judgment which seeks return of the trust property and assess a money judgment in the amount of $266,468.60.

Item 10 of the judgment of the bankruptcy court states: *"Upon compliance by Mary Sue Bell and Sue Bell holdings, LLC with items Nos. 7, 8 and 9 above, the relief under USC 550 for violations of 11 USC 548, and relief under La. R.S. 9:2221, as assessed in paragraphs 2 and 4 above shall be satisfied. "* Items 7, 8 and 9 are for recovery of the property transferred via Dation en Paiement, Act of Exchange, and Termination of Trust. Item 2 assesses the money judgment against Mary Sue Bell and Sue Bell Holdings, LLC in the amount of $266,468.60. This was the amount of the alleged debt that supported the transfer. Accordingly, upon recovery of the trust property, the dollar amount assessed in item 2 will be "satisfied". The preferred remedy is restoration of the trust property and upon the same monetary award of $266,468.60 is satisfied. As such there seems like there can be no duplicate recovery or duplicate award.

II.  The $60,000.00 award and the $162,214.96 award.

Appellee has reviewed the testimony of plaintiff's witness Lou Rolfes, CPA and a copy of the report produced by him in evidence as PE 50. Appellant's brief to the District Court was also reviewed. At no time did Appellant raise this argument at trial or after except for a quick

---

[10] *Id.*

reference in her brief to this court. Yet my review also shows that the $162,214.96 does include the $60,000.00 *"retainer"*. Unlike the $266,468.60, for which trust property was taken by Mary Sue Bell the $60,000.00 was paid to Mary Sue Bell in cash prior to the transfer of trust property and was not part of the $266,468.60. As such it would not be *"recovered"* by the trust in the event that the transfer of property is avoided, like the $266,468.60 would be recovered. Nevertheless it does appear that the $162,214.96 awarded in item number 1 of the Bankruptcy Court award was calculated including the $60,000.00 cash retainer referenced in item 3 of the judgment and to that extent is duplicative.

Pursuant to FRCP 60 an error in a judgment from an oversight or omission may be corrected while the appeal is pending. Appellant contends that to the extent correction is required, the numerical calculation of $162,214.96 could be reduced by $60,000.000 or down to $102,214.96 and the award of the $60,000.00 in item number 3 of the judgment remain. Alternatively the award of $60,000.00 could be reversed and the $162,214.96 upheld. We do not believe that such calls for full reversal or remand for retrial.[11]

On September 19, 2007, The Fifth Circuit affirmed the bankruptcy court's judgment, but eliminated paragraph 3 of the 2005 judgment, which awarded the duplicative $60,000 already included in paragraph 1.[12]

The Fifth Circuit's decision on appeal concluded the adversary proceeding. By this time, fall 2007, all the real estate that was subject to the Dation and other transfers had been returned to the Trust by virtue of the Judgment rendered by the Bankruptcy Court on the Plaintiff's Rule 7070 Motion.

## C.    The Bankruptcy Court sanctions Ms. Bell and then concludes the Bell Family Trust's main bankruptcy case

In 2009, Ms. Bell filed an adversary proceeding in this Court and three adversary proceedings in the United States District Court for the Western District of

---

[11] Letter from Jeffrey Ackermann to Charles R. Fulbruge, III, Clerk of Court, U.S. Ct. of App. for the 5th Cir. (09/13/07), filed (09/14/07), ECF #273-2 (emphasis in original).

[12] The reference to the 2005 Judgment in this opinion means the 2005 Judgment of the Bankruptcy Court as amended by the Fifth Circuit.

Louisiana.[13] Some of these proceedings named not only the Trust as a Defendant, but also Ms. Bell's brothers, sisters, nieces, nephew, and the attorneys who represented the Chapter 7 Trustee in this adversary proceeding. All these matters were ultimately dismissed because they were attempts by Ms. Bell to relitigate matters that had already been resolved by the bankruptcy court in this case.

In early 2010, Ms. Bell again began threatening actions against the Trust and others. Thus, in July 2010 (ECF # 186 in the Trust's Chapter 7 bankruptcy case, Case No. 02-50477) the Trust filed a Motion for Contempt, Sanctions and other Relief, seeking damages for Ms. Bell's continued violations and threatened violations of the automatic stay under section 362 of the Code. On August 3, 2010, a minute entry was entered into the record of the bankruptcy case that states: The "Motion is granted in part − Sue Bell is prohibited from filing any lawsuit against the trustee or trustee's attorneys in state or federal court without first requesting permission from this court. In default the court will impose attorney fees and sanctions."[14]

A final decree was entered in the Bell Family Trust Bankruptcy Case on February 14, 2012, and thereafter the Chapter 7 bankruptcy case was closed.

## D.    Ms. Bell attempts to relitigate the Chapter 7 and Adversary Proceedings

Ms. Bell thereafter sought to reopen the bankruptcy case for the purpose of filing a motion under Federal Rule of Civil Procedure 60 to vacate all prior orders and dismiss the case for lack of jurisdiction. Ms. Bell argued the Trust was a *spendthrift* trust, rather than a business trust eligible for relief under Chapter 7, and that the Trustee had therefore illegally withheld payment of her distributions. This Court denied her motion, citing a final June 2002 judgment in the bankruptcy proceeding

---

[13] The 2009 adversary proceeding in this court was assigned case number 09-05001 and captioned as *Bell et al. v. Sandoz*; the actions filed in the Western District were identified by case numbers 09-01980, 09-01984, and 09-01985 all under the caption *Bell v. Sandoz et al.*
[14] Minute Entry, (08/03/2010), ECF #198.

finding the Trust was a business trust rather than a spendthrift trust. Ms. Bell appealed to the United States District Court for the Western District of Louisiana.

In its September 16, 2013, Report and Recommendation, not only did the magistrate judge for the district court affirm the bankruptcy court, but it also recommended Ms. Bell be prohibited from filing further frivolous actions in the district and bankruptcy courts. On October 11, 2013, the district court adopted the magistrate judge's Report and Recommendation and ordered Ms. Bell "to refrain from instituting any further actions against the Defendant herein or its counsel or the bankruptcy judges based on any matters set forth in her Appeal at bar lest she be ordered to appear and show cause why she should not be held in contempt of court."[15]

The district court's ruling was affirmed by the United States Court of Appeals for the Fifth Circuit on July 8, 2014. In affirming, the Fifth Circuit warned Ms. Bell "that any further frivolous or abusive filings in this Court, the district court, or the bankruptcy court will invite the imposition of sanctions, including dismissal, monetary sanctions, and/or restrictions on her ability to file pleadings in this Court and any court subject to this Court's jurisdiction."[16]

On December 8, 2014, the Supreme Court of the United States issued a ruling which denied a motion "to direct the Clerk to file a petition for writ of certiorari out of time."[17]

**E.     Ms. Bell reinscribes the previously canceled collateral mortgage causing state court litigation to ensue**

On July 6, 2015, Ms. Bell signed and recorded a Notice of Reinscription for the original 1997 Collateral Mortgage signed by Mr. Bell in favor of Ms. Bell dated March 13, 1997, which secured the $40,000 promissory note given by Mr. Bell on the same

---

[15] *Bell v. Bell Family Trust*, 6:13-CV-00639, p. 1 (W.D.La. Oct. 11, 2013), 2013 WL 9805803.

[16] *In re Bell Fam. Tr.*, 575 F. App'x 229, 233 (5th Cir. 2014).

[17] *Bell v. Bell Family Trust*, 574 U.S. 1046, 135 S.Ct. 772, 190 L.Ed.2d 625 (2014).

date. This mortgage was cancelled in the 2005 judgment. Thus, there were no grounds for Ms. Bell to have the mortgage reinscribed.

While the Trustee of the Trust was working to sell all the Trust's real estate, the reinscription of the mortgage was discovered. On November 4, 2020, Mr. Mier, as Trustee acting on behalf of the Trust, sent a certified letter to Ms. Bell advising her that the Mortgage and Reinscription were no long in effect and requesting her to cancel those recordings. Ms. Bell received the letter and responded. Following Ms. Bell's failure to cancel the Mortgage and Reinscription within thirty days of the Trust's certified letter, the Trust filed a Petition for Cancellation of Mortgage on December 8, 2020, in the Louisiana 15th Judicial District Court. The petition sought to cancel the Mortgage and Reinscription, as well as assess costs and attorney fees against Ms. Bell in accordance with La. Rev. Stat. § 9:5176.

On March 22, 2021, the Louisiana district court judge signed a judgment directing the clerk of court to cancel the 1997 Mortgage and 2015 Reinscription and awarding the Trust with costs and attorney fees. On April 27, 2022, the Louisiana Court of Appeal, Third Circuit, affirmed the judgment of the Louisiana 15th Judicial District Court.

**F.    Ms. Bell sues Mr. Mier and the Trust in state court; The Trust reopens this Adversary Proceeding for the purpose of reviving the 2005 Judgment; Ms. Bell files the Motions for Sanctions and Clarification**

In 2024, Ms. Bell retained new counsel, who sent a letter to Mr. Mier on May 24, 2024, inquiring about alleged discrepancies between the Trust's accounting and Ms. Bell's assertions regarding the satisfaction of the 2005 Judgment.[18] During the hearing on Ms. Bell's Motion for Sanctions, Mr. Mier stated he responded to this letter, and that there was no further correspondence with Ms. Bell's lawyer.

Thereafter, Ms. Bell, pro se, filed suit against Mr. Mier and the Trust in Louisiana state court. The nature of this suit is not clear, but it appears that Ms. Bell

---

[18] Letter from Jena M. Kyle, Allen & Gooch, to Greg Mier, Trustee of the Bell Family Trust, (05/24/2024), ECF #282-7.

is seeking an accounting from the Trust and the Trustee for distributions she claims are due to her as a beneficiary of the Trust. It also appears that that she may be raising some of the same issues that were long ago decided in this case, such as her assertion that the Trust is a spendthrift trust and that distributions are illegally being withheld from her. She also appears to be seeking damages from Mr. Mier.

During the pendency of the state court action, the trial judge was made aware of an order from federal court that may prohibit Ms. Bell from suing the Trust and Trustee in any state or federal court. The state court's concern in this regard is apparently what led Ms. Bell to file her Motion for Clarification in this Court.

On July 28, 2025, Mr. Mier filed an Ex Parte Motion to Reopen Case and a Motion to Revive Judgment in this court. On August 5, 2025, this Court granted both motions. On September 9, 2025, Ms. Bell filed her Motions for Sanctions and Clarification, which are described in the opening paragraphs of this opinion.

## LAW AND ANALYSIS

### A.    Motion for Sanctions

Ms. Bell's Motion for Sanctions assails this Court's granting of the Trust's Motion to Revive Judgment on two grounds. First, she claims the Judgment of Revival was improperly granted because she was not given notice of the filing of the Motion to Revive Judgment. Second, she claims Mr. Mier's affidavit filed in support of the motion to revive is misleading because it states that the Judgment remains unsatisfied. Ms. Bell asserts that the "money judgment" portion of the Judgment has been satisfied and thus should not have been revived.

### 1.    Reviving federal court money judgments

Before turning to Ms. Bell's arguments, the Court will first examine the law and procedure governing revival of judgments in this Court.

14

Prior to the enactment of the Fed. R. Civ. Proc. 81, the revival of a judgment in federal court was generally obtained through a writ of scire facias.[19] Federal R. Civ. P. 81(b) "abolished" writs of scire facias and mandamus and provides that "[r]elief previously available through them may be obtained by appropriate action or motion under these rules."[20]

Federal R. Civ. P. 69(a) is broad enough to cover the revival of judgments in federal court. It provides:

> ***Money Judgment; Applicable Procedure.*** A money judgment is enforced by a writ of execution unless the court directs otherwise. The procedure on execution−**and in proceedings supplementary to and in aid of judgment or execution**−must accord with the procedure of **the state where the court is located**, but a federal statute governs to the extent it applies.[21]

Rule 69(a) essentially authorizes federal courts to "borrow the format employed in the courts of the forum state" for reviving judgments.[22] Federal R. Bankr. P. 7069 incorporates Rule 69 into the Bankruptcy Rules. Thus, in actions to revive a judgment entered by this Court, Louisiana law governs.

In Louisiana, the rules for revival of judgements are found in La. Civ. Code art. 3501 and La. Code Civ. Proc. art. 2031; the Civil Code article provides the substantive parameters of the revival process, while the Code of Civil Procedure provides the means of execution. Civil Code article 3501 provides:

> A money judgment rendered by a trial court of this state is prescribed by the lapse of ten years from its signing if no appeal has been taken, or, if an appeal has been taken, it is prescribed by the lapse of ten years from the time the judgment becomes final.

---

[19] *Securities Investor Protective Corp. v. Institutional Securities of Colorado, Inc.*, 37 Fed. App'x 423, 425 (10th Cir. 2002) ("The relief formerly obtained through scire facias included revival of judgments.").
[20] Fed. R. Civ. P. 81(b).
[21] Fed. R. Civ. Proc. 69(a) (emphasis added).
[22] *Resolution Trust Corp. v. Ruggiero*, 994 F.2d 1221, 1226 (7th Cir. 1993).

15

> **An action to enforce a money judgment rendered by a court of another state or a possession of the United States, or of a foreign country, is barred by the lapse of ten years from its rendition; but such a judgment is not enforceable in this state if it is prescribed, barred by the statute of limitations, or is otherwise unenforceable under the laws of the jurisdiction in which it was rendered.**
>
> Any party having an interest in a money judgment may have it revived before it prescribes, as provided in Article 2031 of the Code of Civil Procedure. A judgment so revived is subject to the prescription provided by the first paragraph of this Article. An interested party may have a money judgment rendered by a court of this state revived as often as he may desire.[23]

Article 3501 establishes the prescriptive period on money judgments as 10 years and then directs parties to La. Code Civ. Proc. art. 2031 for the process to revive a judgment. That article provides:

A.   A money judgment may be revived at any time before it prescribes by an interested party **by the filing of an ex parte motion brought in the court and suit in which the judgment was rendered.** The filing of the motion to revive interrupts the prescriptive period applicable to the judgment. **The motion to revive judgment shall be accompanied by an affidavit of the holder and owner of the judgment, stating that the original judgment has not been satisfied**. A judgment shall thereupon be rendered reviving the original judgment. **No citation or service of process of the motion to revive shall be required.** The court may order the judgment debtor to pay additional court costs and reasonable attorney fees in connection with the judgment revival action. Notice of signing of the judgment of revival shall be mailed by the clerk of court to the judgment debtor at his last known address as reflected in the suit record.

B.   At any time after the signing of the judgment of revival, the judgment debtor may, by contradictory motion, have the judgment of revival annulled, upon showing that the

---

[23] LA. CIV. CODE ANN. art. 3501 (2025) (emphasis added).

> judgment which has been revived was in fact satisfied prior
> to the signing of the judgment of revival. If the judgment
> debtor proves that the judgment has been satisfied prior to
> the filing of the motion to revive the judgment, the holder
> or owner of the judgment shall pay all court costs, fees, and
> attorney fees incurred by the judgment debtor in opposing
> the ex parte order of revival and the cancellation of the
> judgment from the mortgage records.[24]

Article 2031 sets forth a simple, straight-forward procedure for reviving a money judgment. All that is required is a motion accompanied by an affidavit from the holder or owner of the judgment stating that the judgment remains unsatisfied. The motion to revive may be filed ex parte, and citation or service of process of the motion is not required. If this procedure is followed, an order reviving the judgment will ordinarily be entered, and the clerk of court will provide notice of the signing by mail to the judgment debtor's last known address.

Although Louisiana's judgment revival procedure requires notice of the signing of the judgment of revival to be sent to the judgment debtor, it does not require notice of the filing of the motion to revive judgment. But a judgment debtor is not without a remedy if the motion to revive judgment is improvidently granted. Louisiana Code Civ. Proc. art. 2031B authorizes the judgment debtor to seek annulment of the judgment of revival if the judgment debtor can show "the judgment which has been revived was in fact satisfied ***prior*** to the signing of the judgment of revival."[25] The judgment debtor's right to bring such motion does not arise until after the judgment of revival has been signed. If the judgment debtor is successful in proving that the revived judgment was satisfied prior to the signing of the judgment of revival, the judgment debtor is entitled to court costs, fees and attorney's fees incurred in contesting the ex parte motion to revive judgment.

Under Article 2031B, the judgment debtor's rights are limited to showing that the revived judgment was satisfied. Defenses to the original action cannot be asserted

---

[24] LA. CODE CIV. PROC. ANN. art. 2031 (2025) (emphasis added).
[25] LA. CODE CIV. PROC. art. 2301B (emphasis added).

as a basis for contesting the judgment of revival.[26] Put another way, if a judgment debtor files a contradictory motion seeking to annul a judgment of revival, the court will only consider evidence and arguments that may prove the judgment was satisfied prior to the signing of the judgment of revival.

The Court will now turn to Ms. Bell's arguments.

### a.     Ms. Bell's right to notice of the Motion to Revive Judgment

Ms. Bell's argument, that she was entitled to notice of the filing of the motion to revive judgment prior to its granting, is meritless. As noted above, Louisiana law allows a revival motion to be filed ex parte. There is no requirement of notice, citation, or service of process. The only requirement is that the motion for revival be accompanied by an affidavit from the holder of the original judgment stating the money judgment remains unsatisfied. Such an affidavit was filed with the Motion here. Additionally, Ms. Bell was provided with notice of the signing of the Judgment of Revival. Thus, the revival motion was properly filed, and the Court's Order granting revival complies with Louisiana law.

### b.     Ms. Bell's claim that the judgment has been satisfied

Ms. Bell's sanction motion also seeks damages against Mr. Mier for filing an allegedly false affidavit in support of the motion to revive judgment. Ms. Bell contends that she satisfied the judgment prior to Mier's filing of the motion to revive judgment. Thus, she claims Mr. Mier's affidavit filed in support of revival is untrue. In support of her contention, Ms. Bell attached an accounting prepared by the Trust's

---

[26] *See Louisiana Mach. Co. v. Passman,* 158 So. 2d 419 (La. Ct. App. 1963) (applying affirmative defenses to the enforcement of the judgment due to discharge in bankruptcy, not a defense concerning the validity of the original judgment); *Gegenheimer v. Galan*, 182 F.3d 915 (5th Cir. 1999) ("Early case law establishes that the only acceptable defense that qualifies as a good cause [for opposing the revival of a judgment] is an absolute nullity of the original judgment.") (*see* citing *McCutchen v. Askew*, 34 La. Ann. 340 (1882)); *Mansfield Truck Sales & Serv., Inc. v. Fortney*, 2009 WL 1610847 at *1 (Ohio App.); *see also, In re Beery*, 2007 WL 1521140, at *1 (D.N.M.) (overruling arguments against revival that had been made and rejected before the original judgment was entered).

18

accountant, apparently provided to Ms. Bell by Mr. Mier, and shows that she still owes more than $300,000 on the original Judgment. She also attached what she describes as a corrected accounting, which she claims was also prepared by the Trust's accountant, but apparently without Mr. Mier's knowledge. According to Ms. Bell, the corrected accounting gives credit for the property she returned to the Trust, which under Paragraph 10 of the 2005 Judgment, would reduce the amount of the money judgment owed by her by $266,468.60.

Ms. Bell also asserted in her written Motion for Sanctions and during the hearing that Mr. Mier had improperly retained her distributions from the Trust in violation of the spendthrift provisions of the Trust and Louisiana law.

During the hearing on this matter Mr. Mier disputed that Ms. Bell had returned all the property to the Trust, and even if it had been returned, he claimed Ms. Bell's performance was defective. In particular, he claimed the promissory notes and Co-Op stock certificates had been canceled by Ms. Bell prior to returning them, making them worthless. Thus, in Mr. Mier's assessment, Ms. Bell did not fully comply with Paragraph 10 of the Judgment. Mr. Mier also asserted that Ms. Bell's motion was nothing more than a rehash of the matters already litigated and decided between the parties, particularly her claims that distributions are being improperly withheld based on Ms. Bell's renewed assertion that the Trust is a spendthrift trust.

Given the conflicting positions of the parties regarding what was returned to the Trust by Ms. Bell and the lack of any competent documentary evidence to show what was delivered to the Trust by Ms. Bell, and when, in satisfaction of the $266,468.60 awarded in Paragraph 2 of the 2005 Judgment, the Court is unable to determine whether Mr. Mier's affidavit is materially incorrect. Regardless, a Motion for Sanctions is not the appropriate method for raising that issue. Louisiana Code Civ. Proc. art. 2031B requires the filing of a contradictory motion asserting the judgment has been satisfied and such motion must be accompanied by competent proof showing satisfaction. Only if Ms. Bell can show the 2005 Judgment was satisfied

19

will she be entitled to sanctions, and by statute, the sanctions would be limited to attorney's fees and costs.

Accordingly, the Court will also deny Ms. Bell's motion for sanctions to the extent it is based on her assertion that Mr. Mier's affidavit is misleading. However, the Court will allow Ms. Bell 30 days from the date of this Memorandum Opinion and Order to file a contradictory motion in accordance with Article 2031B. Such motion should clearly and succinctly set forth how and when all aspects of the 2005 Judgment were satisfied.

The Court cautions Ms. Bell that she will be limited to presenting evidence and arguments that may show the 2005 Judgment was satisfied by actions that took place *after* the date of the 2005 Judgment—i.e., Ms. Bell is not allowed to relitigate any of the matters decided in the 2005 Judgment or other litigation between the parties, and the Court will not entertain any arguments that the Trust is a spendthrift trust, or that the 2005 Judgment is not valid. Below, in the "Motion for Clarification" section of this opinion, the Court will outline any additional restrictions on Ms. Bell's access to this and other courts.

## B. Motion for Clarification

The Motion for Clarification asks this Court to review a "Protective Order" which Ms. Bell contends was entered by the Bankruptcy Court on or about June 19, 2003. According to Ms. Bell, this order prohibited her from suing the Trust or the Trustee in state or federal court. Again, there was much confusion during the hearing on this matter, as Ms. Bell did not provide a copy of the protective order, and the Court was unable to locate it. Since the hearing, the Court has verified that a motion for protective order was filed in the adversary proceeding by a potential witness or deponent in 2003, but the motion was denied. Thus, the protective order referenced by Ms. Bell does not appear to exist.

During the hearing on the Motion for Clarification, Mr. Mier provided the Court with a copy of an August 3, 2010, minute entry from the Trust's bankruptcy

20

case, Case No. 02-50477.[27] Under this Order, Ms. Bell was barred from filing any action against the Trust, Trustee, or any counsel for such in any state or federal court. This order essentially confirmed the existence of the automatic stay under section 362 of the Bankruptcy Code (which was the legal basis for the Motion for Contempt and Sanctions) and warned Ms. Bell not to violate the stay in the future. Of course, the Trust's Chapter 7 bankruptcy case was closed over 13 years ago, and thus there is no automatic stay protecting the Trust or Trustee from the filing of lawsuits at this time.

The history of the litigation between the parties, however, reveals that the Federal District Court for the Western District of Louisiana and the Federal Fifth Circuit Court of Appeals entered orders in certain litigation between the parties that prohibited Ms. Bell from filing vexatious and frivolous actions against the Trust and other parties. As noted above, on October 11, 2013, the District Court ordered Ms. Bell "to refrain from instituting any further actions against the Defendant herein or its counsel or the bankruptcy judges based on any matters set forth in her Appeal at bar lest she be ordered to appear and show cause why she should not be held in contempt of court."[28] In affirming, the Fifth Circuit warned Ms. Bell in 2014, "that any further frivolous or abusive filings in this Court, the district court, or the bankruptcy court will invite the imposition of sanctions, including dismissal, monetary sanctions, and/or restrictions on her ability to file pleadings in this Court and any court subject to this Court's jurisdiction."[29]

These rulings by the District Court and the Fifth Circuit essentially enjoin Ms. Bell from making frivolous or abusive filings in federal courts against the Trust, its Trustee, and the other beneficiaries.[30] The fact that Ms. Bell is now proceeding *pro se* does not shield her from these requirements, as "[p]*ro se* status is no aegis."[31]

---

[27] Minute Entry, (08/03/2010), ECF #186.

[28] *Bell v. Bell Family Trust*, 6:13-CV-00639, p. 1 (W.D.La. Oct. 11, 2013), 2013 WL 9805803.

[29] *In re Bell Fam. Tr.*, 575 F. App'x 229, 233 (5th Cir. 2014).

[30] *See Nix v. Major League Baseball*, 62 F.4th 920 (5th Cir.), *cert. denied*, 144 S. Ct. 165, 217 L. Ed. 2d 62 (2023).

[31] *Id.* at 937 (citing *Farguson v. MBank Hous., N.A.*, 808 F.2d 358, 360 (5th Cir. 1986)).

However, this Court is cognizant that the injunction must not effectively deny Ms. Bell access to the courts.[32]

Because of Ms. Bell's extensive and prolonged abuse of the judicial process in this Court and other courts within the United States' Fifth Circuit, the previous bar on frivolous and vexatious litigation in the United States Bankruptcy and District Courts for the Western District of Louisiana will remain in place. Based on the court's review of the prior litigation between the parties, the court finds the following matters are classified as frivolous, abusive and/or vexatious claims or tactics: all filings by Ms. Bell raising (1) claims that the Bankruptcy Court lacks jurisdiction over the Trust's bankruptcy, (2) claims that the Trust is a spendthrift trust and that her distributions are protected by the spendthrift designation, (3) claims by Ms. Bell for reimbursement of expenses she allegedly incurred while acting as trustee for the trust, and (4) any matter put forth and litigated in any of the prior cases and matters between Ms. Bell and the Trust. Ms. Bell is on notice that any filing in this Court in pursuance of the contradictory motion discussed above that falls within the category of frivolous, abusive and/or vexatious is subject to being stricken from the record, and Ms. Bell may face possible monetary sanctions and dismissal of the contradictory motion if she attempts to pursue such claims in the contradictory motion.

The category of nonfrivolous filings in federal court include the contradictory motion discussed in this opinion. Both the list of frivolous and list of non-frivolous matters are not exhaustive and are provided as examples only.

Ms. Bell's Motion for Clarification also raises the extent to which she may be barred from filing litigation against the Trust, Trustee and beneficiaries in Louisiana state court. As noted above, the previous prohibition was based on the automatic stay in place while the Trust's bankruptcy proceeding was pending. That stay is no longer

---

[32] *Id.* at 937 (citing *Farguson* ("Such injunctions must be tailored to protect the courts and innocent parties while also protecting the right of the enjoined party to file non-frivolous lawsuits.")).

in place, and thus there does not appear to be any prohibitions on Ms. Bell pursuing litigation in state court.

The Court also notes that Ms. Bell was previously a defendant in a matter filed by the Bell Family Trust in the Fifteenth Judicial District Court, Parish of Vermilion which she appealed to the Louisiana Court of Appeal, Third Circuit.[33] The Louisiana Third Circuit discussed the previous bars for vexatious litigation in the federal courts and made no mention of an extension of that bar within their jurisdiction.[34] Thus, in this Court's view, there does not appear to be any prohibitions in place that would prevent Ms. Bell from pursuing nonfrivolous litigation against the Trust in state court. Nor is the Court aware of any authority that would allow a bankruptcy court, outside of the automatic stay in a pending bankruptcy case, to impose such restrictions.

## JURISDICTIONAL STATEMENT

Finally, the Court must consider the extent of its jurisdiction over the contradictory motion that may be filed by Ms. Bell. The court finds it has jurisdiction to revive the judgment and over any motion seeking to annul the judgment of revival under Fed. R. Bank. P. 7069, which incorporates Louisiana law on these matters. Louisiana law requires the motion to revive to be brought in the court and suit in which the judgment was rendered. Since this court rendered the 2005 Judgment, it has exclusive jurisdiction to revive the judgment. The same Louisiana law provides that this court, as the court granting the judgment of revival, has jurisdiction over any contradictory motion seeking to annul the judgment of revival. The court's jurisdiction, however, ends with the contradictory motion.

## ORDER

---

[33] *Bell Fam. Tr. v. Vermilion Par. Clerk of Ct.,* 2021-573 (La. App. 3 Cir. 4/27/22), 338 So. 3d 537.
[34] *Id.* at 542-43 (discussing the United States District Court for the Western District of Louisiana's bar on Ms. Bell for vexatious litigation).

23

For the foregoing reasons, and upon consideration of the entire record herein, it is hereby **ORDERED** that:

1. The Motion for Sanctions is **DENIED**;

2. Ms. Bell shall have 30 days from the date of this Memorandum Opinion and Order within which to file a Contradictory Motion as authorized under La. Code Civ. Proc. art. 2031B, noticing such motion for an evidentiary hearing in accordance with this Court's rules and procedures;

3. The Motion for Clarification is **GRANTED** as follows:

   a. Ms. Bell may file the Contradictory Motion authorized by La. Code Civ. Proc. art. 2031B;

   b. Ms. Bell is prohibited from filing frivolous, abusive and/or vexatious litigation in the United States Bankruptcy and District Courts for the Western District of Louisiana; "frivolous, abusive and/or vexatious litigation" includes, but is not limited to: all filings by Ms. Bell raising (1) claims that the Bankruptcy Court lacks jurisdiction over the Trust's bankruptcy, (2) claims that the Trust is a spendthrift trust and that her distributions are protected by the spendthrift designation, (3) claims by Ms. Bell for reimbursement of expenses she allegedly incurred while acting as trustee for the trust, and (4) any matter put forth and litigated in any of the prior cases and matters between Ms. Bell and the Trust; and

   c. There are currently no orders or other judgments from this Court that prohibits or limits Ms. Bell's right to pursue any litigation in Louisiana state courts.

24